In behalf of the panel, let me say that we're very pleased to be here sitting in Boston, and especially at Northeastern Law School. Let me give you a little background on our court. We are one of the 13 circuit courts of appeals on the same level as all the others. We differ from the others in that we are national, not regional, but we have specific jurisdiction, not general. It's part of the legal history of our statute, we were created in 1982, that we sit from time to time outside of Washington. Every year we go somewhere and we decide where we'd like to go. We get invitations to come from district courts and from law schools, and maybe we got a nice one from you. In any event, we decided to come to Boston. We have sat in Boston, I think, probably four times, three of them at least, since I've been in the court, which is 25 years. Our major jurisdiction is patent cases. When I joined the court, we had about a third of our cases being patent cases, and now they're well over 50% for various reasons. So we hear patent appeals from all over the country. We also hear suits from the Court of Federal Claims for money damages not based on tort against the government, federal government. These include government contract cases, Fifth Amendment takings, Indian claims, quite an interesting collection. We hear suits from appeals from the Court of International Trade, dumping, countervailing duties, customs. We have personnel appeals. We hear veterans appeals from the Court of Veterans Claims. We hear, and I should have mentioned when I mentioned that we hear cases from the Court of International Trade, Judge Wallach was in the Court of International Trade. We hear cases from the Merit Systems Protection Board from government employees. So we have quite an interesting collection of cases. Now today, and I mentioned that patent appeals are increasing. The others may be going down, but they're under a new system, statutory system enacted by Congress. A lot of issued patents are being re-examined in the Patent Office. Those are now coming back to us. I'm sorry if today we're looking for diversity, but we have two government employee appeals that are combined and are submitted on the briefs and will not be argued. But we have four patent cases. One is from the District Court, and the other three are from the Patent Office involving review of issued patents. We'll have an opportunity to interact with you, if you like, afterwards at lunch, and you can ask us any questions. Now we have cases to hear, and so let us proceed. The first case, which is Southwire Company v. Sellawire, 15-1117, Mr. Bradley. May it please the Court. In ruling that META anticipates the claims, the Board erred in three key respects. First, the Board applied an incorrect legal standard in determining that combining META with admitted prior art could constitute an anticipation, and it cannot. Second, the Board entirely disregarded the claim requirement that the pulling lubricant permeate the sheath of a THHN cable to become available at the outer surface of the cable when it's pulled. The Board didn't address it. The examiner, for his part, ruled that it was inherent, but provided no analysis. But the basic issue here is a cable and lubrication that permeates the material. It's basically all there in META, isn't it? It's not at all, Your Honor. The prior art that we overcame, that had been in existence for decades, involved externally lubricating cables and pulling them through conduit and joint enclosures. This invention changed the industry by internally lubricating by applying a lubricant during the manufacturing process, interjecting it into the nylon in the right levels, the right concentrations, such that when it's pulled, the lubricant permeates the sheath and becomes available at the outer surface. The testimony that's in the record is that it works like magic, and it really changed the industry. So, it's not just simply lubricating any old nylon. Let me ask you this. At 18, in the red brief, Sero argues that the central... Where in the proceedings below did you argue that META did not disclose permeating? Give me a JA site, please. In A2252, we argued and made clear that META did not even disclose adding the lubricant to the nylon jacket at all. And if the lubricant's not introduced into the nylon jacket at all, then of course it's not permeating. It wasn't even there. We argued consistently to the board that adding the claimed lubricant into a nylon cable jacket material was not disclosed by META. And if you don't introduce the lubricant into the nylon at all, well, of course it's not going to permeate to the outer sheath when it's pulled. META does not even disclose anything about the cable. It mentions the word cable, but it never talks about pulling forces, what may happen to the lubricant as it's pulled. This is absolutely arguable. Mr. Gravey, you or your firm may not have argued or prosecuted this patent, but obviously the Patent Office found META as being very relevant. Whatever we decide on it, the Patent Office thought it was relevant in reexamination. META is buried in the middle of 150 to 200 references, and the duty of disclosure requires bringing to the Patent Office's attention relevant reference. Is that properly complying with the duty to bury it in 100 plus references? I think META has really very, very limited relevance at all to the claims at issue. META, at most, talks about introducing small points. Well, you may be right that the Patent Office loses. We'll eventually decide that. But what I'm saying is META was obvious. They made the rejection, and I'm just calling attention to the fact that META wasn't singled out, apparently, and the prosecution was buried in it. Four columns of references. You're speaking about the original prosecution where it was cited? Right, yes. From our perspective, from South Park's perspective, it just wasn't relevant. It was just another reference that mentioned lubricants, and META is talking about processing lubricants for films, and it doesn't say anything about cables. It mentions the word cable later in the specification, but it doesn't say anything about it. In other words, it's really a crowded art. It is a crowded art to some extent. This isn't really springing forth as a substantial new and clearly unobvious invention. That's not true at all, Your Honor. And first of all, we are talking about anticipation here, but this invention was a giant leap forward. For decades, people in the industry had been externally lubricating these cables on the job site. It created a mess. It was expensive. It was time-consuming. And when Southwire created this invention, it eliminated all of that. It has taken over the industry, which is why we have CERO and Next Encore. We have competitors coming in, challenging this patent that Southwire came up with, saying it's in dollar. Returning to Judge Wallach's question about waiver, the site that you directed us to at 2252 is the appellant's rebuttal brief to the board. Is it enough for the appellant to raise, in their rebuttal brief to the board, an issue they didn't raise in their initial brief regarding the case? And let me add on top of that, because I want to follow. I've looked at what you've got here. But what you're saying is, well, Meta doesn't mention any of this stuff. Where is your permeating or migrating argument? In the brief to the board, we did not specifically argue that it's permeating. What we did, we didn't have to get there, because there was no need. We said at every stage, in both the original appeal brief and again in the rebuttal brief, that Meta does not disclose anything pertinent about cables. It doesn't disclose anything pertinent about introducing a lubricant into a cable. And if that's true, then we don't have to go forward to the next step and say, and because the lubricant's not in the cable, it obviously doesn't permeate to the outer sheet when it's pulled. Meta doesn't talk about any of that. And we made that clear both in the original appeal brief and in the rebuttal brief. At every stage, that Meta does not teach anything meaningful about a cable or THHN cable. And introducing a lubricant is just not disclosed in Meta. And here, again, we're talking about does Meta anticipate, not is it obvious, does it anticipate? Where did you make, show me the best place in your original brief as opposed to your rebuttal brief where you believe you raised the THHN cable argument that you're now making. On A2190, the statements were general but encompassing. On A2190, the beginning of the first full paragraph says that Meta teaches nothing about the claim manufacturing process for these claims. And it goes on and says, although Meta mentions cable as a possible application, Meta concentrates on film. It doesn't disclose the steps for processing a THHN cable. It cannot anticipate. Well, you say Meta teaches nothing regarding a pulling force of the claimed THHN cable. But that's not the same as saying Meta doesn't actually disclose the THHN cable. Your statements here are somewhat different, it seems to me, than the arguments you're making now. You have a stronger case for the arguments you're making now in your rebuttal brief before the Board. But I'm just a little bit nervous that possibly you didn't preserve some of these issues. So show me which sentence do you think makes it clear to the Board below that you were arguing that even if Meta is construed as applying to cable, it never expressly discloses THHN cable and that there are good reasons why thermal heat, I don't remember, thermal heat something or other cable might be different than other kinds of cable. The arguments you're making now to us are precise and scientific and clear about why the THHN in particular matters as opposed to all forms of cable. And I certainly don't see any degree of specificity mirroring your current briefs in the brief to the Board. And so I'm nervous that you didn't preserve the issues. So show me where you think is your best argument. The best argument I think is in 2190, A2190, there's a paragraph that begins second. The second sentence of that says, Meta teaches nothing regarding pulling force of the claimed THHN cable. And that sentence again focuses on the pulling forces, but it's again referencing the THHN cable. And one reason that it wasn't... That's your best? One reason that I can think of at the moment. We say at the very end of that same paragraph that Meta does not teach anything meaningful about a cable or a THHN cable. It's another, I think, a good spot where we made clear that it doesn't talk about cables. And then we separately said, or THHN cables. We added that modifier. It was clear all along that Meta does not disclose this. No party had argued that it did. The parties below and the examiner just said, well, it's admitted prior art. And we said... The examiner had also rejected these claims on obviousness, didn't he? The claim one, the one that bafflingly to me was limited by the Board to an analysis on anticipation. They just sidestepped the obviousness rejection, is that right? There was an argument by CERO that Meta alone rendered it obvious, but the Board did not address that one either. And the rest were all combinations. It wasn't just an argument by CERO. The examiner had, in fact, found the claim obvious, correct, in light of Meta? In light of Meta in combination with certain other references. There was no finding by the examiner or Board that Meta alone rendered the claim obvious. It was all... The only time we addressed Meta was on just straight anticipation. Because your main argument to us is this is a Jepson claim. And as such, the THHN reference in the claim, which comes, of course, in the preamble, is nonetheless a limitation because it's stating the prior art, right? That is correct. It appears both in the preamble and provides the antecedent basis for later recitations. Yeah, which is your argument for why it's a limitation. Right, and there's no dispute. But if it's a Jepson claim and it appears in the preamble, that is an admission by the applicant that it is part of the prior art. I'm going now to the obviousness notion. I don't know what good it necessarily does your client if we vacate and remain on the technicality of anticipation when there is a teed-up obviousness rejection that, for whatever bizarre reason, the Board just didn't address. I do implore the Court not to presume or predispose of an obviousness argument, as the Court's well aware the test is quite different. We can introduce evidence about secondary considerations, about how important this invention has been. We can draw distinctions on the prior art. But you, in fact, already did that, right? You had that opportunity for the other claims at issue here. And they were not resolved. The Board never made any finding on them. It's not right for this Court to address them. On the claims other than Claim 1 on obviousness? On grounds other than the Anticipation Ground. The only ground the Board has addressed and made any findings as to is the Anticipation Ground. And that's just because they got the law wrong. The case that we point to, that I highlight to your Honor and the Court, is Roe v. Roe. And in that case, there was a Jetson-style claim. And the preamble recited a balloon angioplasty catheter. And the prior art showed everything, but except for that preamble. And this Court said, that cannot be anticipation. I guess your comment a minute ago was a little confusing to me. Only because, looking back at my notes, I see the Examiner may not have rejected Claim... But they did go through and affirm the rejections of Claims 4, 5, 9, and 10 as obvious. Given that 4 is simply a dependent claim, wouldn't you have introduced all of your secondary consideration evidence pursuant to that process? I believe, your Honor, that I'll clarify. In this case, in the Serial Appeal, there's no obviousness cases. The 4, 5, 9, and 10, that's in the next Appeal Encore. Okay. One patent, two appeals, two re-exams. Yes. I'm doing my best to keep it straight. I am in my rebuttal time, and I'd like to reserve the remainder of my time. We will save that for you and, in fact, give you two minutes of rebuttal time. Thank you, Your Honor. Mr. Stedman. Before you begin, Mr. Stedman, you have a cross appeal. And we think it's not a proper cross appeal because it's another argument for sustaining the judgment. And so you're perfectly entitled to make the argument here, but we're not going to give you a second argument to have the last word on sustaining the judgment. And I personally didn't read your second brief because you're appellee. So please proceed, but consider that you have one argument time, 15 minutes. Thank you, Your Honor. I didn't reserve any rebuttal time. Okay. Good morning, and may it please the Court. I'm Paul Stedman from DLA Piper for Serowire. We did argue that both of the arguments are waived. Both of the arguments, the main arguments on appeal, are waived. Don't stand by that. I'm happy to answer questions about that, but if there are no particular questions as to that, I think that our time would be best spent addressing the question that counsel raised at the end of his argument, and that is, did the… Let me ask. This is an anticipation rejection. All of the limitations of the claim must be in one reference. MEDA doesn't disclose Nylon, does it? MEDA does disclose Nylon, Your Honor. If you look at MEDA, in column 4, which is the key portion about… Can you tell us what page in the appendix, please? I can. It's appendix page A178, column 4, line 21. According to the method of the present invention, the above-described siloxane blend B is added to the thermoplastic resin A and serves as a surface modifier, therefore, and so forth. If you then turn to the prior page and look at column 1, line 47, which is the very beginning sentence of detailed description of the invention, the thermoplastic resin that constitute the component A of the invention are preferably polyolefins, but can be other thermoplastic resins as well, such as Nylons. So, Nylon is specifically disclosed as a non-preferred compound in MEDA as what can be the thermoplastic resin. Where does MEDA disclose the THHN cable? That's a good question and one that you only get to if you get past the waiver argument. Going back to column 4, after it says that you can put the siloxane blend B into the thermoplastic resin A to serve as a surface modifier, it then talks about how that might be used. Line number 28. This method is particularly applicable to the production of cast film or blown film, but also finds utility in sheet molding, extrusion blow molding, injection stretch blow molding, injection molding, pipe, wire, or cable extrusion and so forth. So, if you have a nylon pipe covered cable or wire, that's certainly within the ambit of THHN. It doesn't use that designator specifically, but it does say that. Now, if you go to the preamble of these claims that we've been looking at, because the claims are amended, you have to look at them yourself while you read the amended claims. For example, on page 11 of their brief, I tend to focus on claim 9, which is the one that has the siloxane in it, but we can look at any of them. In claim 9, it says, in a THHN electrical cable, of the type comprising a conductor core and a sheath surrounding said conductor core in which the sheath has at least its exterior portion formed of a nylon material. That is exactly, precisely what is disclosed in MAKA, a cable with its outer sheath made of nylon material. But a THHN electrical cable is a precise type, a species of cable. It is not identically any nylon cable with a sheath. It is a precise kind of cable, thermal, heat resistant, whatever, whatever, whatever. I don't remember what the acronym stands for. But it is a particular type of cable, and that is a claim limitation, and for anticipation, every single limitation has to be present in the accused device. I mean, accused, not accused. Every single limitation has to be present in the prior art reference, and so I'm struggling with where THHN cable is in the prior art reference. I think perhaps that counsel and their brief have confused that issue by making THHN be more precise than it actually is. It is simply a commercial designation. If you look at their own patent, the 024 patent, column 6, where it's talking about what THHN cable is, if you go down to line 17, column 6, line 17, it's talking about type THHN or THWN2 conductors are usually a soft copper insulated with a tough, heat resistant, moisture resistant polyvinyl chloride over which a polyamide layer, specifically nylon, is applied. They're talking about what it usually is. The patent itself is talking about what it usually is, and the only thing that is specific and called out by the patent specification as being specific to THHN is the polyamide layer, specifically nylon. Unless you're willing to read in from the specification to the claims limitations that are described only as being usually there. I don't understand. It seems to me that you're asking us to make fact findings about what the nature or the characteristics are of THHN cables, and then to conclude based on those fact findings, which we can't make as an appellate court, that something identical or similar or close enough is disclosed in MEDA. I feel you can tell from the nature of my question, it's not a friendly question, that it's not something that I feel that I'm able to or should appropriately do on appeal. I don't think that's what we're asking you to do. The standard on appeal is whether the court below made a clear error, and this court has said that it will affirm if there is substantial evidence to support the decision below. Looking at the claim language, which says that THHN is something comprising a conductor core covered in nylon, looking at the specification which says the only specific thing about THHN that's important to the invention is that it's specifically covered by nylon, and that you make a change to the nylon, looking at MEDA, which teaches cable extrusion of nylon that's been modified exactly the same way as claimed in the patent, it was fair for the board below to conclude that MEDA would teach a person of skill in the art, would suggest to a person of skill in the art, the exact same modification to THHN as is claimed. But is the standard for anticipation what one of skill in the art would be able to do based on a reference, or doesn't it require a higher level of detail in terms of... As I understand the question, I'm sorry, as I understand the law, the law is that a prior art reference is prior art for all that it would teach a person of skill in the art. You don't have to look for the letters THHN. Wow, time out. You think for anticipation, anything a reference teaches one of skill in the art, which necessarily encompasses everything one's skill in the art brings to the table. The knowledge that a skilled artisan is coming to the table with is good enough for anticipation. Don't you think that statement of yours would be a dramatic expansion of anticipation doctrine? I do not. Wow. There are cases which hold that a prior art reference anticipates a claim through inherent disclosure. Inherent disclosure means that it would have to teach a person of skill in the art something inherently which is not actually written there. Inherency doctrine requires that not possibilities or probabilities or likelihood are sufficient even if it's 99% of the time. It has to be automatic 100% and never, ever does it not come to fruition. Inherency is a very, very narrow doctrine as this court has defined it. Is your argument that THHN cable is inherently disclosed in meta? Is that your argument? No, that was not my argument. You asked whether a prior art reference had to have all of it in there. I said no. The cases clearly say that they don't. If it inherently discloses to a person of skill in the art. Okay, but if the only example of when something can actually be found to anticipate despite not disclosing an element is when that element is nonetheless inherently present and you're admitting that's not your case, I don't understand. We cite the cases in here that say that, for example, which says that prior art reference can anticipate as long as it's disclosed. It's prior art for all that it discloses to a person of skill in the art. Here I don't really think it's a closed case. Unless you're willing to look at the letters THHN and require the reference to have the letters THHN in it. The claim says that THHN is defined as something comprising a conductor core and an outer sheet of nylon. That is exactly what is taught by the prior art reference. Anything further? I want you to talk about waiver even though you breathe quiet. I'd like to talk about waiver too. The idea that they argued for the permeating or migrating argument below is facially not reasonable. Their briefs in the board below don't even use the words permeating or migrating. They're saying they made a different argument and they didn't have to make permeating or migrating so they didn't but they get to raise it here. That's clearly wrong. If you look at their brief below and I go to the same page as the council did starting at A2189. They made two arguments, one of which has two sub-arguments. The first argument is that MEDA is direct in the use of siloxanes as processing aids with a focus on application to films. Helpfully on page 2189 they even say first, that's their first argument. Then on page 2190 they follow with their second argument. Second, there is no factual evidence showing that the specifically blended siloxane is made that does more than affect the coefficient of friction of a raw material in a film. Then they, over the next several pages, talk about sub-arguments to that second argument. One that's based on the Declaration of Civil Staff and one that's based on the Declaration of William W. Nertle. If you look at the board's decision, that's exactly the way that the board reads their brief as well. You can see that on pages of the record A9 through A13. The board first lays out its factual basis for finding a claim anticipated on A9 and A10. Then it deals with the four exact arguments in their brief in turn. Helpfully labeling them first, second, third, and fourth over the pages A10 through A12. I also want to deal finally with the thing that I was going to start with, which is whether the board made a legal error. Counsel has consistently asserted that they made a legal error by simply assuming that THHN was in the preamble of the Jepson-style claim and therefore was admitted in the art. That is true as a matter of law and it is the first thing the board says. But that is not what the board actually relies on. The board recites that and then goes on to actually examine MATA and look for reasons why it might anticipate. You can see there are reasons that start on A9 and go all the way down to A10. MATA discloses, I'm reading the third to the last line of A9. MATA discloses exactly the same method steps, material compositions, and products as those recited in Claims 1 through 15 of the O2-4 patents. And thus the properties of the product must be explicitly or inherently the same and so forth. So they didn't simply rely on the fact that it was recited in the preamble of the Jepson claim, which is the legal argument that counsel is making. They actually went through and analyzed it and adopted the examiner's reasoning. So he is wrong that they made that error of law and so he has to show that the error of fact is not supported by substantial evidence. Do you think they adopted the examiner's reasoning in total or do you think that they deviated and inserted some of their own or some different reasoning with regard to MATA? I haven't done a detailed examination of whether they adopted the examiner's reasoning in wholesale or not. Because on page A9, which is page 8 of that opinion, they describe what the examiner found. And one of the examiner's findings includes a quote about MATA describing the limitation and then goes on to say THHN cable. And so the examiner seems to have potentially found that the MATA reference discloses THHN cable. I don't know that the board actually expressly said that. And that's why I'm wondering, do you think they nonetheless adopted the examiner's finding that this reference discloses THHN cable? I agree with you that's not 100% clear. The board gives its own reasoning, but then twice says the examiner's determination that the claims are anticipated is supported by the preponderance of evidence. So I would say they adopted it and then reiterated the evidence that they found persuasive, whether or not it was exactly what the examiner found below. Before you sit down, I just want to give you a chance to say how your cross-appeal would alter CERO's legal status, given the PTAB found 1 to 15 anticipated. Yes, if you find that the claims are anticipated, it's moot. If you don't, it's another reason that we should affirm the finding that the patent is invalid. Whether you treat it as a cross-appeal or simply another reason to support the board's decision. Thank you. Mr. Steadman, Mr. Bradley has two minutes for rebuttal. Who needs it? Judge Moore, addressing the court, but addressing a comment Your Honor made. The examiner did not find that THHN cable was disclosed by MATA. On A1625, the examiner said, quote, note, the claims THHN construction is taken as conventional and known in the art, since the claim is written in GEPSON format. The board did the same thing, and that's wrong. MATA does not anywhere disclose THHN, and the board errs a matter of law by combining the supposed admitted prior art with the disclosures in MATA. That's an error of law. It's not entitled to deference, and it's wrong. Here, there was no waiver. At least Southwire presented the same concept as is presented here. Southwire said all along, MATA does not teach anything pertinent about cables, about pulling forces, about THHN. It said that time and time again, and it's at least the same concept, and that's sufficient under the Harris case. Also, this court has discretion to address an issue, even if you think it may or may not have been waived. It was a close call. The court has discretion for errors that involve purely legal questions for which the resolution is clear. Here, it is very clear that anticipation cannot lie when you have a combination of admitted prior art with what MATA discloses. That is an error of law, and it's wrong. This court can, even if it has the sense that it was waived, which we think is wrong, it still has discretion to hear that. The interactive gift case says that, and some others do as well. Going back to Mr. Sedman's comments about what MATA discloses, it does not disclose THHN cable. The net money in decision requires that the disclosure in MATA be arranged as in the claim that's being anticipated. The mention of cable in the context of polyolefin is not a disclosure for purposes of anticipation of a nylon sheave cable, a THHN cable. I see that I'm out of time. It is. You can finish your sentence. The disclosure there is not sufficient. It does not anticipate a generic reference to a nylon cable, if we even assume MATA says that. It does not anticipate THHN in a row versus drawer, a generic disclosure. Do you have a semicolon in that sentence? There is, Your Honor. A generic disclosure to a balloon catheter did not disclose for anticipation a balloon angioplasty catheter. Thank you. Thank you, Mr. Bradley. We appreciate your observing the lights, and we'll take the case on revisement.